Affirmed and Opinion filed May 31, 2007








Affirmed and Opinion filed May 31, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00484-CV

_______________

 

ANTONIO TORRES, Appellant

 

V.

 

COLIN TESSIER, Appellee

                                                                                                                                               


On Appeal from the 113th District Court

 Harris County, Texas

Trial Court Cause No. 04-54885

                                                                                                                                                

 

O P I N I O N








Appellant Antonio Torres sued
appellee Colin Tessier, alleging that Tessier negligently caused an auto
accident that injured Torres.  It is undisputed that Tessier drove his car into
the back of Torres=s truck while Torres was stopped at a traffic light.  It is
also undisputed that Tessier was not watching the road at the time and took no
action to avoid the collision.  The jury found neither Tessier nor Torres
negligent.  In a single issue, Torres argues the trial court committed
reversible error by including a sudden-emergency instruction in the jury
charge.  Because the jury reasonably could have concluded that Torres failed to
carry his burden of proof, we affirm. 

I.  Factual
and Procedural Background

At around 3:00 p.m. on February 1,
2004, Antonio Torres was driving his pick-up truck in the middle lane of Main
Street in Houston, Texas next to Reliant Stadium, where the Super Bowl was
being held.  Torres was accompanied by his five-year-old son.  Approximately
two car lengths behind him, seventeen-year-old Colin Tessier was driving his mother=s car in the same lane and traveling
at approximately fifteen or twenty m.p.h.  Tessier was accompanied by two
friends, and his radio was on.  There were many pedestrians on the sidewalks,
and Tessier had seen people walking in and on Main Street near the stadium that
day.  

After both cars had traveled several
blocks, Torres stopped at a red traffic light.  At about the same time, Tessier
looked to his left for two and one-half or three seconds while he continued to
drive down Main Street, making no effort to stop, decelerate, or swerve to
avoid Torres=s vehicle.  Consequently, the front of Tessier=s car collided with the back of
Torres=s truck.  

Torres later testified that although
he felt pain right away, he did not complain of pain at that time because he
was more concerned about his son.[1]  After the
police concluded their investigation of the accident, Torres drove to his wife=s place of employment and drove her
home from work.  He testified that he told his wife that his back hurt, and
took Tylenol before going to bed.  Torres further testified that his pain
worsened over the next couple of days, and he decided he needed professional
advice.  He therefore consulted an attorney.  








According to Torres=s trial testimony, his attorney gave
him a list of doctors, and Torres chose a chiropractor from the list.  He began
treatment on February 5, 2004 for pain in his neck and his upper and lower back
and shortly thereafter filed suit against Tessier for negligence.  Torres was
treated approximately twelve times over the next four weeks.  No medicines were
prescribed, and no x-rays, MRI=s or CAT scans were performed.  

During cross-examination, Torres
conceded he testified in his deposition that his attorney referred him directly
to the chiropractor who treated him for the injuries he allegedly sustained. 
Torres also agreed he had received no medical bills from the chiropractor. 
Moreover, he admitted he had been in a prior accident in which he had been
driving the same truck, was struck from behind, and received treatment for his
lower back.  As a result of that accident, Torres had filed a lawsuit using the
same attorney he initially consulted in this case, but he was treated at a
different facility by a different health care provider.  According to Torres,
the lawsuit arising from the previous accident concluded about six months
before this case went to trial.  Torres made no claim for property damage in
this suit and no claim for future impairment or pain, but instead sought $2,685
for past medical expenses and damages for past pain and mental anguish.  

Although Tessier agreed that if he
had been keeping a proper lookout he would have stopped his car before
colliding with Torres, the parties hotly disputed Tessier=s reason for driving through downtown
Houston without attending to the road.  During trial, Tessier testified that A[o]ut of the corner of my eye I
glanced over because of fear of hitting someone, something.@  Torres=s attorney produced evidence that
Tessier had previously testified, AI saw somebody that caught my
interest on the side.@  At trial, Tessier explained that the person to whom he
referred in his deposition was Aa pedestrian on the road.  Or in, you know, in that area.@  He stated that AI glanced over to the left and
accidentally looked at someone, fear of hitting a pedestrian@ and when asked what had caught his
attention, Tessier stated, AIt was a movement, which, you know, was out of a group of
people. . . . I saw a movement amongst everything on the
road.  People and whatnot.@ 

Based on this testimony, Tessier
requested the following sudden-emergency jury instruction: 








If a person is confronted by an Aemergency@ arising suddenly and unexpectedly,
which was not proximately caused by any negligence on his part and which, to a
reasonable person, requires immediate action without time for deliberation, his
conduct in such an emergency is not negligence or failure to use ordinary care
if, after such emergency arises, he acts as a person of ordinary prudence would
have acted under the same or similar circumstances.

Torres objected to the instruction on
the grounds that there was no evidence supporting its submission.  He argued
that because Tessier admitted there were many pedestrians and he had seen them
around and on Main Street before the accident, the events he described were not
unexpected.  Torres also produced Tessier=s response to a request for
admissions in which Tessier admitted that A[a]n emergency did not contribute to
the cause of the collision made the basis of this lawsuit.@  

Over Torres=s objections, the trial court
included the sudden-emergency instruction in the following jury question: ADid the negligence, if any, of those
named below proximately cause the occurrence in question?@  The names of Torres and Tessier
followed the question, and the jury wrote Ano@ next to each name.  In addition to
the sudden-emergency instruction, the jury received instructions defining Anegligence,@ Aordinary care,@ and Aproximate cause@; however, the jury charge did not
contain an instruction identifying or defining Athe occurrence in question.@  The trial court rendered judgment
in accordance with the verdict, and this appeal ensued.

II.  Issue
Presented

In a single issue, Torres contends
there is no evidence to support the submission of a sudden-emergency jury
instruction, and the trial court=s error in including the instruction
probably caused the rendition of an improper judgment.[2]








III. 
Standard of Review

The trial court must submit jury
questions, instructions, and definitions that are raised by the written
pleadings and the evidence.  Tex. R.
Civ. P. 278.  We review a challenged jury charge for an abuse of
discretion.  Tex. Dep=t of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990). 
To determine whether the incorrect submission of an inferential rebuttal
instruction requires reversal, we examine the entire record to determine
whether the instruction A>was reasonably calculated to and
probably did cause the rendition of an improper judgment.=@  Bed, Bath & Beyond, Inc. v.
Urista, 211 S.W.3d 753, 757 (Tex. 2006) (quoting Reinhart v. Young,
906 S.W.2d 471, 473 (Tex. 1995)); see also Tex. R. App. P. 44.1(a).  

IV. 
Analysis

To prevail on a negligence claim, the
plaintiff must not only establish that the defendant breached a duty, but must
also prove that the plaintiff sustained damages proximately caused by that
breach.  D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002).  Here, the evidence Torres offered
to establish the elements of proximate cause and damage consists of his
subjective complaints of pain and medical records documenting those
complaints.  The jury was free to disbelieve this evidence; moreover, the jury=s credibility determination is
implicit in its verdict, and we presume that jurors decided all questions of
credibility and conflicts in the evidence in favor of the verdict if reasonable
people could do so.  See City of Keller v. Wilson, 168 S.W.3d 802, 819
(Tex. 2005).  








Assuming without deciding that the
sudden-emergency instruction should not have been submitted, we disagree with
Torres=s contention that the instruction
probably caused the jury to render an improper verdict.  First, there is no
clear indication that the jury relied on this instruction.  See Urista,
211 S.W.3d at 759 (A[W]hen considering the entire record in this case, which
provides no clear indication that the instruction probably caused the rendition
of an improper verdict, we must conclude that the trial court=s submission of the instruction was
harmless.@).  Moreover, reviewing the evidence under the applicable standard of
review, we conclude that another explanation is both more likely and more
reasonable: the jury=s failure to find negligence could reasonably be based on its
failure to find causation, damages, or both.[3] 
Specifically, the jury could reach any of these conclusions based on evidence
such as the following:

$                  
Torres refused an
ambulance at the scene;

$                  
he did not
complain of pain immediately;

$                  
he did not seek
medical treatment until after he consulted a lawyer;

$                  
all of Torres=s medical care was rendered by a
chiropractor recommended by his attorney;

$                  
Torres had
previously been in a rear-end collision in the same vehicle, claimed back
injuries, and sued the tortfeasor using the same attorney;

$                  
although the
prior case concluded only six months before this accident, Torres selected a
different health care provider for this accident;

$                  
the medical
records indicate that Torres did not disclose his prior injury or treatment to
the chiropractor treating him for this accident;

$                  
no x-rays, MRI=s, or other scans were ordered or
performed;

$                  
no prescription
or Aover-the-counter@ medication was prescribed;

$                  
the medical claim
forms contain the affirmative statement that his injury is not related to an
auto accident;[4]

$                  
the medical claim
forms also date the onset of his symptoms to January 2004; and








$                  
Torres=s payroll records show that, in his
occupation as a carpet and flooring installer, he earned more money during the
month of his injury and treatment than in eight other months that year.

Considering all of the evidence, we
conclude a reasonable jury could have found that Torres failed to prove all of
the elements of his negligence claim; therefore, the jury could have answered
the broad-form liability question in the negative without regard to the
sudden-emergency instruction.

In reaching this conclusion, we apply
the same reasoning used in the similar case of Bed, Bath & Beyond, Inc.
v. Urista.  211 S.W.3d at 757B59.  In Urista, the plaintiff
claimed that a store employee using a broom to retrieve merchandise caused
plastic trash cans to fall from a high shelf in an adjacent aisle and strike
the plaintiff on the head, resulting in severe back injuries.  Id. at
755.  There, the Texas Supreme Court concluded that the improper inclusion of
an inferential rebuttal instruction in an otherwise proper broad-form liability
question was not reversible error because it was reasonable to conclude that
the plaintiff failed to carry his burden of proof.  Id. at 757.  The
Court explained that the defendant=s primary defense consisted of
attacking the plaintiff=s credibility.  Id. at 757.  The Court then held that
because Athe defendant=s cross-examination provides a
sufficient basis for discrediting the plaintiff=s claims, supporting the jury=s verdict in its favor, we cannot
conclude that the instruction probably caused the jury to render an improper
verdict.@  Id. at 758B59.  








The same reasoning applies here, and
compels the same result.  In Urista, as here, the plaintiff continued
his errands after the alleged injury.  See id. at 755.  There, as here,
the plaintiff had a preexisting back injury and did not complain of pain at the
scene.  See id.  In Urista, medical tests taken after the
incident did not reveal any changes to the plaintiff=s back, id. at 758; here, the
treating chiropractor did not even order objective tests to detect an injury. 
Evidence was admitted in Urista that the plaintiff=s doctor altered medical records at
his attorney=s request to indicate that the injuries were caused by the accident.  Id. 
Here, the evidence of non-liability is arguably stronger: although the
chiropractor=s final report states that Torres was Ainjured by motor vehicle accident,@ all of the medical claim forms
associated with Torres=s treatment contain affirmative statements that Torres=s injury was not related to an auto
accident and date his symptoms to January 2004, before the accident. 

Considering all of the evidence under
the applicable standard of review, we cannot say that the inclusion of a
sudden-emergency instruction probably caused an improper verdict.  Accordingly,
we overrule Torres=s sole issue on appeal.

V. 
Conclusion

We hold that any error in submitting
a sudden-emergency instruction was harmless; and therefore affirm the judgment
of the trial court.

 

 

 

 

/s/        Eva M. Guzman

Justice

 

Judgment rendered and Opinion filed
May 31, 2007.

Panel consists of Chief Justice
Hedges and Justices Hudson and Guzman. 









[1]  There are no allegations that Torres=s son was injured in the accident.





[2]  Torres originally asserted that the inclusion of
this instruction also prevented him from presenting his case on appeal.  This
argument was based on an opinion that has since been reversed.  See Urista
v. Bed, Bath & Beyond, Inc., 132 S.W.3d 517, 521 (Tex. App.CHouston [1st Dist.] 2004), rev=d, 211
S.W.3d 753 (Tex. 2006).  The Texas Supreme Court has now clarified that the
improper submission of an inferential rebuttal instruction in a broad-form
negligence question requires reversal only if the error is reasonably
calculated to and probably did cause an improper judgment.  Bed, Bath &
Beyond, Inc. v. Urista, 211 S.W.3d 753, 757 (Tex. 2006) (quoting Reinhart
v. Young, 906 S.W.2d 471, 473 (Tex. 1995)).  In his reply brief, Torres
acknowledges this holding and offers no basis for distinguishing Urista. 
We therefore treat this argument as abandoned or waived and do not address it
further.  





[3]  Torres claimed bodily injury only; there was no
claim for property damage.





[4]  Each claim form contains the question, AIs the patient=s
condition related to: a. Employment?  b. Auto accident?  c. Other
accident?@  After each option are two boxes labeled AYes@ and ANo.@  There is also
a blank that reads, APlace (State) ____@
next to the option, AAuto accident.@ 
In each of the claim forms, the APlace@ is identified as ATX,@ but the option Aauto
accident@ is checked Ano.@  Instead, the option Aother accident@ is checked Ayes.@